UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIO L. COOPER,                              Case No. 1:14-cv-800
    Plaintiff,                          Barrett, J.
                                             Litkovitz, M.J.
  vs.


COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                             **RECOMMENDATION**
    Defendant.


    Plaintiff brings this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for supplemental security income (SSI).   This matter is before the

Court on plaintiff's Statement of Errors (Doc. 9) and the Commissioner's response in opposition

(Doc. 16).

**I.   Procedural Background**

    Plaintiff protectively filed his application for SSI in February 2013, alleging disability

since October 1, 2012, due to depression, panic attacks and post-traumatic stress disorder

(PTSD), deformed cartilage and ball, degenerative bone disease and partial paralysis of the right

shoulder, arthrosis of the glenohumeral joint, acromioclavicular joint separation, and Hill-Sachs

fracture of the left shoulder.   (Tr. 297).   Plaintiff's application was denied initially and upon

reconsideration.   Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Peter J. Boylan.   Plaintiff and a vocational expert (VE) appeared

and testified at the ALJ hearing.   On August 5, 2014, the ALJ issued a decision denying

plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied,

making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps

of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th

Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since February 21, 2013, the application date (20 CFR 416.971 *et seq.*).

> 2. The [plaintiff] has the following severe impairments: degenerative joint disease of the bilateral shoulders; lumbar degenerative disc disease; chronic obstructive pulmonary disease; a depressive disorder; an anxiety disorder; a personality disorder; and a history of polysubstance abuse (20 CFR 416.920(c)).

> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity [(RFC)] to perform light work as defined in 20 CFR 416.967(b) except as follows: the [plaintiff] could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however, he should never climb ladders, ropes, or scaffolds. Further, the [plaintiff] should never reach overhead with his bilateral upper extremities. The [plaintiff] should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and he should avoid all exposure to hazards, such as machinery and heights. Additionally, the [plaintiff] is limited to simple, routine, and repetitive tasks, as

3

well as simple work-related decisions.   The [plaintiff] is unable to perform at a
production rate pace (such as assembly line work), but could perform
goal-oriented work (such as an office cleaner).   Moreover, the [plaintiff] is
limited to tolerating occasional changes in a routine work setting.   The [plaintiff]
could occasionally interact with supervisors and coworkers on a superficial basis,
but he should never interact with the public as part of his job duties.

5. The [plaintiff] is capable of performing past relevant work as a cleaner.   This
work does not require the performance of work-related activities precluded by the
[plaintiff]'s residual functional capacity (20 CFR 416.965).[1]

6.   The [plaintiff] has not been under a disability, as defined in the Social
Security Act, since February 21, 2013, the date the application was filed (20 CFR
416.920(f)).[2]

(Tr. 11-22).

## C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]  Plaintiff's other past relevant work was as a carpenter assistant and material handler, both unskilled positions,
performed at the heavy level of exertion; and a hand packer, which was performed at the medium level of
exertion.   (Tr. 20-21, 50).

[2] The ALJ also relied on the VE's testimony to find that plaintiff would be able to perform the requirements of
representative light, unskilled occupations such as bench assembler (6,000 jobs locally and 675,000 jobs
nationally), inspector (1,000 jobs locally and 270,000 jobs nationally), and packager (1,500 jobs locally and
190,000 jobs nationally), and representative sedentary, unskilled occupations such as assembler (1,300 jobs
locally and 158,000 jobs nationally), inspector (325 jobs locally and 36,000 jobs nationally), and hand packager
(50 jobs locally and 10,000 jobs nationally).   (Tr. 22, 52-53).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.   Specific Errors**

Liberally construing plaintiff's pro se statement of errors in his favor, plaintiff challenges the ALJ's finding of non-disability on the following grounds:   (1) plaintiff argues that he is entitled to disability benefits because he has a number of medical impairments and accompanying symptoms which preclude him from working; (2) plaintiff alleges that the ALJ should have found him disabled based on the VE's testimony about the effect of frequent absences on plaintiff's ability to engage in competitive employment; (3) plaintiff contends the

5

ALJ erred in rejecting the Global Assessment Functioning (GAF) scores of 45 and 49 contained

in the record; and (4) plaintiff contends the ALJ improperly assessed his credibility. Plaintiff

further argues that his "new" evidence, exhibits C and D to his brief, warrants a remand for

further administrative proceedings. (Doc. 9).

### E. The ALJ's decision is supported by substantial evidence.

Because plaintiff is proceeding pro se, the Court has carefully reviewed the ALJ's

decision to determine whether the ALJ's critical findings of fact were made in compliance with

the applicable law and whether substantial evidence supports those findings. *See Troth v.*

*Comm'r of Soc. Sec.*, No. 3:11-cv-272, 2012 WL 1185999, at *2 (S.D. Ohio April 9, 2012)

(Black, J.); *Angel v. Comm'r of Soc. Sec.*, No. 1:06-cv-857, 2008 WL 2795803, at *13 (S.D.

Ohio July 16, 2008) (Spiegel, J.). The Court has considered the issues raised by plaintiff as well

as those presented by defendant's responsive memorandum. The Court finds after a careful

review of the record that the decision of the ALJ is supported by substantial evidence and should

be affirmed.

The record substantially supports the ALJ's finding that plaintiff suffers from severe

impairments of degenerative joint disease of the bilateral shoulders; lumbar degenerative disc

disease; chronic obstructive pulmonary disease; a depressive disorder; an anxiety disorder; a

personality disorder; and a history of polysubstance abuse. (Tr. 12). The ALJ determined,

however, that plaintiff's alleged seizure activity does not constitute a severe impairment. (Tr.

12). The ALJ acknowledged plaintiff's testimony at the hearing that he suffered from seizures,

but he noted there was no medical documentation of seizures. The ALJ correctly determined

that there is no evidence in the record that plaintiff ever sought treatment or has been prescribed

6

medication for a seizure condition.    Plaintiff's seizure condition, therefore, is not considered a

medically determinable impairment for purposes of his disability application.    *See* 20 C.F.R. §

404.1508 ("A physical or mental impairment must be established by *medical* evidence consisting

of signs, symptoms, and laboratory findings, not only by your statement of symptoms.")

(emphasis added).    The Court finds the ALJ did not err by characterizing plaintiff's seizure

activity as non-severe.

     The Court also finds that the ALJ's RFC finding for a restricted range of light work with

a number of non-exertional restrictions is supported by substantial evidence.    No treating

physician has offered an opinion as to the functional limitations imposed by plaintiff's

impairments.    However, the record includes a number of assessments provided by examining

and non-examining sources.    Under the Social Security regulations, "a written report by a

licensed physician who has examined the claimant and who sets forth in his report his medical

findings in his area of competence . . . may constitute substantial evidence . . . adverse to the

claimant" in a disability proceeding.    *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th

Cir. 2013) (quoting *Richardson v. Perales,* 402 U.S. 389, 402 (1971)).    The regulations further

provide that "[s]tate agency medical and psychological consultants . . . are highly qualified

physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,"

and whose findings and opinions the ALJ "must consider . . . as opinion evidence."    *Id.* (citing

20 C.F.R. § 404.1527(e)(2)(i)).    The opinion of a non-treating but examining source is generally

entitled to more weight than the opinion of a non-examining source.    *Ealy v. Comm'r of Soc.*

*Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th

Cir. 2007).    A non-treating source's opinion is weighed based on the medical specialty of the

source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinions consider all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

1. Plaintiff's physical RFC

In determining that plaintiff has the physical RFC to perform a restricted range of light work, the ALJ relied on the May 2013 assessment provided by consultative examining physician Dr. Phillip Swedberg, M.D. (Tr. 503-10), and the physical RFC assessments of state agency reviewing physicians, Dr. Lynne Torello, M.D., and Dr. Malika Haque, M.D., which were issued in May 2013 and December 2013, respectively (Tr. 89-95, 120-22). (Tr. 19-20). These medical opinions substantially support the ALJ's RFC finding for a restricted range of light work.

Dr. Swedberg examined plaintiff in May 2013. Plaintiff reported his main problem was pain in both shoulders. On examination, Dr. Swedberg found diminished range of motion in both shoulders. (Tr. 505). The remainder of the musculoskeletal and neuromuscular examination appeared within normal limits. There was no evidence of muscle weakness or atrophy and plaintiff had well-preserved grasp and manipulative ability bilaterally. (Tr. 505, 507-10). An x-ray of plaintiff's right shoulder showed chronic changes at the acromioclavicular joint likely due to an old dislocation and evidence of a previous injury to the coracoclavicular

ligament. An x-ray of the left shoulder showed mild degenerative changes and soft tissue

calcification projected inferior to the coracoid process. (Tr. 506). Dr. Swedberg assessed

bilateral shoulder pain. He opined that based on the findings of this examination, plaintiff

appeared capable of performing a moderate amount of sitting, ambulating, standing, bending,

kneeling, pushing, pulling, lifting and carrying heavy objects. Dr. Swedberg also opined that

plaintiff had difficulty reaching overhead, but he had no difficulty grasping or handling objects.

(Tr. 505).

State agency physician Dr. Torello reviewed the record in May 2013. (Tr. 89-95). Dr.

Torello concluded that plaintiff could sit approximately six hours in an eight-hour workday and

stand/walk six hours in an eight-hour workday. She also determined that plaintiff could

occasionally climb ramps and/or stairs, balance, stoop, crouch, kneel, and/or crawl, but he could

never climb ladders, ropes, and/or scaffolds or reach overhead. Dr. Torello further opined that

plaintiff should avoid all workplace exposure to unprotected heights and use of moving

machinery. (Tr. 95).

State agency physician Dr. Haque reviewed the record on reconsideration in December

2013 and opined that plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and

10 pounds frequently; sit about six hours in an eight-hour work day; and stand and/or walk about

six hours in an eight-hour work day. (Tr. 120). Dr. Haque also found that plaintiff could only

occasionally climb ramps or stairs, stoop, kneel, balance, crawl and crouch, and never climb

ladders, ropes, or scaffolds. (Tr. 121). Dr. Haque opined that plaintiff should avoid all work

place exposure to unprotected heights and use of moving machinery. (Tr. 122). In support of

her opinion, Dr. Haque noted the medical evidence of record showing plaintiff sustained rib and

9

sternal fractures and pneumothorax after jumping out of a window; plaintiff ambulated normally;

he had limited range of motion in both shoulders; there were no signs of atrophy; and x-rays

showed only mild degenerative changes. (Tr. 120).

The ALJ gave Dr. Swedberg's opinion "some weight," finding that although Dr.

Swedberg's assessment did not provide a specific level of exertion, his clinical findings on

examination were generally consistent with the other evidence of record and reasonably allowed

for work at the light level of exertion. (Tr. 20). In assessing plaintiff's RFC, the ALJ

reasonably accommodated the shoulder limitations noted by Dr. Swedberg by limiting plaintiff to

no reaching overhead with his bilateral upper extremities. (Tr. 14). In addition, the ALJ

reasonably gave great weight to the assessments of the state agency physicians that plaintiff could

perform a range of light work with restrictions as the medical opinions of the examining and

reviewing physicians were consistent with the medical records of plaintiff's treatment.

Plaintiff was seen in the emergency department for shoulder pain in December 2012.

X-rays revealed no evidence of fracture or dislocation, but did show degenerative changes. (Tr.

762). Plaintiff was discharged with Naproxen and Flexeril for his pain. (Tr. 766).

An MRI in March 2013 continued to show only degenerative changes of the right

shoulder. Plaintiff was treated with a shoulder injection. (Tr. 483-84).

On June 6, 2013, plaintiff was examined by pulmonologist Mitchell Rashkin, M.D., for

pleural effusion and multiple cavitary lesions. Dr. Rashkin noted that plaintiff was admitted to

the hospital on May 30, 2013, "after falling from a tree while trying to rescue a cat." (Tr. 528).

Plaintiff was found to have multiple rib fractures, pneumothorax, and right pleural effusion.

(*Id*.). CT imaging revealed bilateral cavitary lung lesions with air fluid levels. Dr. Rashkin

10

assessed a traumatic pneumothorax, dyspnea, chest pain discomfort secondary to pneumothorax,

pulmonary infiltrates, pulmonary nodules, suspected lung contusion, elevated lung function test

improving, a sternum fracture, and tobacco abuse. (Tr. 531). Dr. Rashkin recommended

follow-up CT imaging in 6-8 weeks to reevaluate other pulmonary nodules/cavitary areas and no

heavy lifting for next 2 weeks. Plaintiff was prescribed Percocet for pain and encouraged

tobacco cessation. (Tr. 532).

When seen for a follow-up examination on June 23, 2013, plaintiff reported that his

injuries occurred after he jumped from an abandoned building. (Tr. 577-78). On examination,

plaintiff exhibited pain on palpation of the sternum and right chest wall. His neuromuscular

examination yielded normal findings. (Tr. 579).

During an August 2013 follow-up examination, the physician noted that a recent CT scan

showed improvement, but other nodules were detected. (Tr. 573). Plaintiff complained of

intermittent chest discomfort at the location of his previous rib and sternal fractures and

intermittent dyspnea. He felt he needed an inhaler, but he had no previous history of lung

disease. (Tr. 573). On examination, plaintiff's lungs were clear and his chest exhibited no

accessory muscle use. Musculoskeletal examination revealed normal strength and tone and no

abnormal musculoskeletal movements. (Tr. 574-75). His pneumothorax was assessed as

resolved on CT chest evaluation and his cavitary lung lesions were "greatly improved." (Tr.

575). He was assessed with unspecified asthma and healing rib and sternal fractures. (Tr. 575).

Plaintiff was seen at the Ohio State University Family Practice to establish care after

moving to Columbus in September 2013. On examination, a straight leg raise test caused pain

in his right low back area. (Tr. 592). Mentally, plaintiff was alert and oriented to person, place

11

and time. His affect was appropriate, his thought process was normal and without evidence of depression or psychosis, and his memory was found to be intact. (*Id.*). He was assessed with back pain; shoulder/joint pain; pulmonary nodules; unspecified asthma; PTSD; snoring; and rhinorrhea. (Tr. 592).

Plaintiff presented to the emergency room on October 18, 2013, for back pain stemming from his previous injury. (Tr. 603). On examination, plaintiff exhibited a good range of motion in all major joints, normal motor function, normal sensory function, and negative straight leg testing. (Tr. 605). His extremities revealed intact distal pulses, no edema, no tenderness, no cyanosis, and no clubbing. (*Id.*). A chest examination revealed normal breath sounds, no respiratory distress, no wheezing, and no chest tenderness. (*Id.*). An October 20, 2013 MRI of plaintiff's lumbar spine showed degenerative changes at L3-4 and L4-5 without significant nerve root impingement or canal stenosis. (Tr. 631).

When seen for a follow-up exam for pulmonary nodules and asthma on November 19, 2013, plaintiff reported he used the inhaler for asthma on several occasions, which gave him a mild benefit which did not last. (Tr. 677).

A pulmonary function study in December 2013 showed moderately severe obstructive airway disease. (Tr. 686-89).

These treatment records do not substantiate plaintiff's claims of debilitating shortness of breath, shoulder and back pain, or other symptoms. With the exception of a two-week restriction against heavy lifting following an exam in June 2013 (Tr. 532), plaintiff's treating sources did not impose any restrictions on plaintiff's work activities. The treatment records and findings therein are consistent with and support the assessments and opinions issued by the

12

examining and reviewing physicians of record.   The medical evidence as a whole, together with the reviewing and examining physicians' medical assessments and opinions regarding plaintiff's physical impairments and functional limitations, substantially support the ALJ's decision that plaintiff is capable of performing a restricted range of light work.   The ALJ reasonably accommodated any residual respiratory deficits in plaintiff's RFC by limiting him to a reduced range of light work with no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.   Giving plaintiff the benefit of the doubt, the ALJ's RFC also included a work restriction on exposure to hazards, such as machinery and heights, to accommodate plaintiff's testimony about seizures.   The record as a whole substantially supports the ALJ's physical RFC finding.

    2.  Plaintiff's mental RFC

The Court also finds that the ALJ's mental RFC finding is substantially supported by the record.   The ALJ included the following non-exertional limitations in the RFC finding to account for plaintiff's mental impairment:   he is limited to simple, routine, and repetitive tasks, as well as simple work-related decisions; he is unable to perform at a production rate pace (such as assembly line work), but could perform goal-oriented work (such as an office cleaner); he is limited to tolerating occasional changes in a routine work setting; he could occasionally interact with supervisors and coworkers on a superficial basis; and he should never interact with the public as part of his job duties.   (Tr. 14).   The ALJ's mental RFC finding is substantially supported by the assessments of the state agency reviewing psychologists and treatment records from the Central Community Health Board (CCHB) and Greater Cincinnati Behavioral Health Services (GCBH).

On October 25, 2011, plaintiff underwent a diagnostic assessment at CCHB. (Tr. 446-56). Plaintiff appeared appropriately groomed and casually dressed; he did not exhibit any unusual body movements or mannerisms; he was engaging and pleasant; his mood was depressed; his affect was full range; his thought content was absent of overt psychosis; his stream of thought was logical; he was oriented; his speech was appropriate and his articulation was clear; his insight was limited; his judgment ranged from poor to fair, depending on the situational context; and his intelligence was found to be within the average range. (Tr. 452). The intake counselor also noted that at the time of this assessment, plaintiff was homeless and trying to secure some form of stable housing. He presented with a history of chronic mental illness and a history of past substance abuse, which was reportedly in partial sustained remission. His drugs of choice were alcohol and marijuana. There was no record of in-patient psychiatric hospitalizations. (*Id.*). Plaintiff was diagnosed with recurrent depression, episodic alcohol abuse, and PTSD, and assigned a GAF score of 45.[3] (Tr. 453).

Plaintiff met with his case manager at CCHB in November 2011, December 2011, January 2012, February 2012, and April 2012. The case manager noted that plaintiff was neatly dressed and well groomed. Plaintiff was alert and oriented, and he was appropriately responsive and talkative. Plaintiff maintained good eye contact; his thoughts were well organized; and his speech was appropriate in pace and volume. He reported no visual or auditory hallucinations and only minor issues with symptom management. (Tr. 411-419). He was prescribed medications by the CCHB physician. (Tr. 411, 420).

---

[3] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Kornecky*, 167 F.

14

In July 2012, plaintiff met with his case manager at CCHB and presented as well-groomed, alert, oriented, appropriately responsive, and talkative. (Tr. 410). He had good eye contact and well organized thoughts, and he denied hallucinations. (*Id.*). Plaintiff's case manager discussed plaintiff's inconsistency with treatment and his failure to follow-up with the case manager as scheduled. (*Id.*).

Plaintiff had no mental health treatment between July 2012 and April 2013. (Tr. 486, 527). In April 2013, plaintiff presented at the emergency department with depression and PTSD. (Tr. 486). He was prescribed Celexa and advised to schedule an appointment with CCBH. (*Id.*).

On April 22, 2013, Paul A. Deardorff, Ph.D., examined plaintiff for disability purposes. (Tr. 491-97). Plaintiff reported he was disabled due to anxiety, depression, panic-like episodes, avoidant behavior, and pain. (Tr. 492). Plaintiff presented with normal grooming and hygiene; he displayed a cooperative demeanor; and he appeared to be depressed but displayed no other eccentricities of manner. (Tr. 494). On mental status examination plaintiff exhibited no psychotic symptomology but appeared to be anxious and depressed. His remote recall was adequate but his short-term memory skills were not strong. His attention and concentration skills were marginally adequate. He appeared to be of low-average to average intelligence. (Tr. 495-96). Dr. Deardorff reported that plaintiff had no difficulty attending or responding to simple questions or following simple instructions but his performance on measures intended to assess short-term memory, attention, and concentration was poor. (Tr. 496). Dr. Deardorff

---

App'x at 503 (citation omitted).

diagnosed major depressive disorder without psychotic features and an anxiety disorder (NOS), and assigned plaintiff a GAF score of 49. (Tr. 496).

Plaintiff requested treatment for PTSD at GCBH on October 31, 2013. He reported his symptoms started in 1991 when his brother committed suicide. He stated he was admitted to the psychiatric floor at University Hospital when he found out his daughter was sexually abused. One week after his discharge, he jumped out of a window when he feared he was locked inside of an abandoned building; he believed this may have been a suicide attempt. (Tr. 673). At that time, plaintiff was assigned a case manager. (Tr. 673). When seen by his case manager at GCBH on November 7, 2013, it was noted plaintiff demonstrated good insight into his diagnoses, his symptoms, and the benefit of medications in treating his mental illness. (Tr. 672).

In December 2013, plaintiff was evaluated at the McMicken Health Collaborative on a referral from his GCHB counselor. On mental status examination, plaintiff was well groomed; his speech was clear; he exhibited no delusions or hallucinations; his thought processes were logical; his mood was euthymic; his affect was full; and he was cooperative. (Tr. 709). He was assessed a GAF of 51-60[4], which indicated moderate symptoms or difficulties in social, occupational, or school functioning. (*Id.*).

Plaintiff underwent a psychiatric assessment in January 2014 at GCBH. The psychiatrist reported that plaintiff presented with a long history of recurrent depression, anxiety, and PTSD symptoms. Additional problems included alcohol and cannabis abuse and poor social adjustment. The psychiatrist noted that they discussed the need to stop alcohol and cannabis use, but plaintiff seemed ambivalent about this. The psychiatrist continued Celexa, lowered

---

[4] A GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers

plaintiff's dose of Vistaril for anxiety, and added Neurontin to target anxiety and reduce alcohol intake. The psychiatrist noted that plaintiff was able to express himself; he was resourceful; and he was "[f]ocused on obtaining disability." (Tr. 835). His diagnoses included PTSD, depressive disorder NOS, episodic alcohol and cannabis abuse, personality disorder NOS, asthma, and panic disorder without agoraphobia. (*Id.*).

In February 2014, plaintiff's case manager described him as "very self-sufficient." (Tr. 816). The following month, plaintiff reported that medication effectively reduced his symptoms. (Tr. 823). In April 2014, plaintiff's case manager noted that plaintiff reported "I have a lot on my plate right now," and he was feeling overwhelmed and did not want to do anything to "mess up his chances at getting social security." (Tr. 826). Plaintiff decided not to see the psychiatrist and declined a bus pass for easier transportation to appointments. (Tr. 826).

The evidence of record was reviewed by state agency psychologist, Tonnie Hoyle, Psy.D., on April 29, 2013. (Tr. 89-95). Dr. Hoyle determined that plaintiff had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 92). Dr. Hoyle found plaintiff's allegations were only partially credible. (Tr. 94). Dr. Hoyle assigned "other weight" to Dr. Deardorff's opinion finding his assessment generally vague to plaintiff's overall functioning. (*Id.*). Dr. Hoyle opined that plaintiff was limited to simple, routine, and repetitive tasks in a low stress environment, which was defined as one free of fast paced production requirements and involving only simple work-related decisions and few, if any, work place changes. Dr. Hoyle also opined that plaintiff should have only

---

or co-workers)." *Kornecky,* 167 F. App'x at 503 (citation and alterations omitted).

occasional contact with co-workers and/or supervisors and no contact with the general public.
(Tr. 95). She concluded, "The PRTF/MRFC given is an adoption of the ALJ decision dated July
1, 2011 which is being adopted under AR 98-4 (*Drummond* Ruling)."[5] (*Id.*).

David Dietz, Ph.D., reviewed the record in December 2013 upon reconsideration and
essentially affirmed Dr. Hoyle's assessment of plaintiff's mental limitations. (Tr. 117-18,
122-23).

As with plaintiff's physical impairments, plaintiff's treating mental health sources did not
impose any restrictions on plaintiff's work activities. In weighing the assessments of the
consultative and state agency psychologists, the ALJ reasonably gave great weight to the findings
of Drs. Hoyle and Dietz and limited weight to the findings of Dr. Deardorff. The mental RFCs
of the state agency psychologists are well-supported by and consistent with the mental health
evidence of record and provide substantial support for the ALJ's mental RFC finding.

Plaintiff contends the ALJ erroneously disregarded the GAF scores that demonstrated his
serious limitations in functioning. The ALJ gave little weight to the GAF score of 45 assessed
by the CCHB counselor in October 2011, noting that the score was inconsistent with plaintiff's
activities of daily living and the relatively benign clinical findings at that time and during
subsequent visits to CCHB. (Tr. 17). The ALJ also declined to adopt Dr. Deardorff's GAF of
49 as an "absolute determination" of plaintiff's functioning given the longitudinal evidence and
Dr. Deardorff's benign mental status examination.

---

[5] Plaintiff had a prior application for SSI that was denied by an ALJ decision dated July 1, 2011. (Tr. 15). In
*Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), cited by Dr. Hoyle, the Sixth Circuit held that
"[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the
Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. In response to
*Drummond*, the Social Security Administration promulgated Acquiescence Ruling 98-4(6). Read together,
*Drummond* and Acquiescence Ruling 98-4(6) establish that a subsequent ALJ is bound by the legal and factual

The ALJ did not err in finding plaintiff's GAF scores of limited evidentiary value. While plaintiff correctly points out that the GAF scores assessed by the CCHB counselor and Dr. Deardorff indicated plaintiff experienced "serious" symptoms, the record shows plaintiff also had GAF scores of 51 and above indicating "moderate" symptoms which were fully accommodated by the ALJ's RFC. (*See* Tr. 709). The Commissioner has also "declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). *See also Kornecky*, 167 F. App'x at 511 ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). The ALJ reasonably considered the record as a whole in declining to find that plaintiff's GAF scores below 50 mandated further restrictions on plaintiff's mental RFC. Where, as here, other substantial evidence supports the ALJ's conclusion, the Court may not reverse the ALJ's decision even where some of the GAF scores were in the sub-50 range. *Kornecky*, 167 F. App'x at 511.

In finding that plaintiff's mental health impairments resulted in an RFC that did not preclude the performance of plaintiff's past relevant work, the ALJ reasonably noted that plaintiff

findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in

19

received sporadic mental health care at CCHB. In his statement of errors, plaintiff asserts

several reasons why his visits to CCHB were sporadic. (Doc. 9 at 4-5). However, the Court

may only consider the evidence in the administrative record in performing its substantial

evidence review and may not consider the reasons posited by plaintiff in his brief for his

behavior. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (court is limited to

reviewing record evidence as it existed before the ALJ). The ALJ further noted plaintiff's

noncompliance with treatment which reasonably suggested his symptoms and limitations were

less severe than he alleged. (*Id.*). In addition, the ALJ considered the findings of plaintiff's

December 2013 mental status examination, which yielded essentially normal findings and a GAF

score that indicated moderate, and not severe, symptomology. (Tr. 18, 709). The ALJ also

explained that plaintiff's care consisted of case management visits as opposed to intensive

psychiatric treatment; that plaintiff was primarily focused on obtaining disability benefits; and

that he most recently declined psychiatric treatment and a bus pass to get to his appointments, all

of which indicated poor motivation to seek genuine treatment. (Tr. 18).

In addition, the ALJ reasonably gave limited weight to the medical source statement

offered by Dr. Deardorff. The ALJ noted that Dr. Deardorff's report identified no specific

work-related functional limitations. The ALJ declined to conclude from Dr. Deardorff's GAF

score of 49 that plaintiff exhibited "serious" as opposed to "moderate" symptomology given Dr.

Deardorff's benign mental status examination and plaintiff's lack of ongoing mental health

treatment prior to his examination with Dr. Deardorff. (Tr. 17). Nevertheless, to the extent

Dr. Deardorff indicated plaintiff may have difficulty with short-term memory, concentration, and

---

the law or a change in the claimant's condition.

attention, the ALJ reasonably accommodated these limitations by restricting plaintiff to simple, routine, and repetitive tasks, simple work-related decisions, and only occasional changes in a routine work setting. (Tr. 14, 496-97).

In sum, plaintiff's records of mental health treatment support the findings of Drs. Hoyt and Dietz, and the ALJ reasonably relied on their assessments in formulating plaintiff's mental RFC.

### 3. Vocational expert testimony

Plaintiff also contends that based on the VE's testimony concerning the effect of frequent absences on employment plaintiff should have been found disabled. Plaintiff's argument is based on the ALJ's third hypothetical question to the VE asking him to assume that a hypothetical individual with plaintiff's age, education, work experience and RFC would be off task 20 percent of the work day and would miss two days of work per month. (Tr. 53). In response, the VE testified that competitive employment would be precluded for such an individual. (Id.). Plaintiff alleges his doctor's visits are numerous enough to meet the threshold of absences and he should be found disabled. (Doc. 9 at 3). Plaintiff's argument is not well-taken.

The VE did not determine plaintiff in fact had specific limitations on working; rather, he simply answered hypothetical questions posed by the ALJ which assumed different physical and mental limitations. "[I]t was the ALJ's function to first determine what medical restrictions [plaintiff] was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions." *Maziarz v. Sec. HHS*, 837 F.2d 240, 247 (6th Cir. 1987). The

21

ALJ did not determine that plaintiff's physical and mental impairments would result in monthly absences or plaintiff's being off-task so as to preclude competitive work. Where, as here, substantial evidence supports the ALJ's finding that plaintiff has the RFC to perform his past relevant work and a significant number of other jobs identified by the VE, "it is irrelevant that the vocational expert also testified that the [plaintiff] could not perform other jobs based upon a hypothetical question[] assuming a more severely restricted RFC." *Neace v. Astrue*, No. 5:11-CV-00202, 2012 WL 4433284, at *9 (E.D. Ky. Sept. 25, 2012) (citing *Maziarz*, 837 F.2d at 246-47). The ALJ was not required to rely on the VE's testimony in response to a hypothetical question that did not accurately reflect plaintiff's physical and mental limitations.

For these reasons, the ALJ's physical and mental RFC findings and his conclusion that plaintiff is not disabled are substantially supported by the evidence of record. Although plaintiff has a number of severe impairments, the evidence does not show that these impairments impose greater functional limitations than those included in the ALJ's RFC finding or are disabling. *See Lee*, 529 F. App'x at 713 ("not every diagnosable impairment is necessarily disabling") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition"). The ALJ's decision finding plaintiff is not disabled should be affirmed.

4. The ALJ's credibility finding

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons

22

for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation

of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely

essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir.

1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Social Security Regulation 96-7p describes the requirements by which the ALJ must

abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the
> individual's allegations have been considered' or that 'the allegations are (or are
> not) credible.' It is also not enough for the adjudicator simply to recite the
> factors that are described in the regulations for evaluating symptoms. The
> determination or decision must contain *specific reasons* for the finding on
> credibility, supported by the evidence in the case record, and must be sufficiently
> specific to make clear to the individual and to any subsequent reviewers the
> weight the adjudicator gave to the individual's statements and the reasons for that
> weight.

(emphasis added). The ALJ's credibility decision must also include consideration of the

following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and

intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the

symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual

takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the

individual receives or has received for relief of pain or other symptoms; 6) any measures other

than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning the individual's functional limitations and restrictions due to pain or other

symptoms. *See* 20 C.F.R. § 416.929(c); SSR 96-7p.

Here, the ALJ properly assessed plaintiff's credibility in light of the above requirements.

A review of the ALJ's decision shows the ALJ considered a number of factors in determining

that plaintiff was not entirely credible. First, the ALJ determined that plaintiff's description of his symptoms and complaints appeared to be out of proportion to the medical evidence. (Tr. 16). As discussed above, the ALJ fully considered the medical evidence of record and his RFC finding is supported by substantial evidence. Second, the ALJ noted plaintiff's inconsistent reports to medical sources. Plaintiff reported to one source that he injured his ribs and lungs after a fall from a tree and reported to another source that he jumped from an abandoned building. (Tr. 15-16). In addition, plaintiff reported to his treating pulmonologist that he never smoked (Tr. 678, 679, 683), which was inconsistent with other evidence showing he smoked a pack of cigarettes every two to three days. (Tr. 41, 708). Third, the ALJ relied on plaintiff's work history and benefits application history to find he was not entirely credible. Specifically, plaintiff's SSI application alleged he stopped working in December 2012 due to his impairments, but his wage information in the record contains only sporadic work going back to 1989. (Tr. 19, 281-292, 297). Fourth, the ALJ noted that plaintiff's infrequent and conservative treatment for his physical impairments following his alleged October 1, 2012 onset date undermined plaintiff's allegations of disability. (Tr. 16; *see* Tr. 482-85, 511-560, 568-70, 572-580, 581-94, 598-670, 677-685, 686-705, 758-783). The ALJ also noted plaintiff's sporadic treatment of his mental health impairments and that plaintiff received no mental health treatment from June 2012 through April 2013 and from April 2013 through October 2013, which was inconsistent with his allegations of disability. (Tr. 17, 410, 486, 527; Tr. 18, 491, 671). The ALJ further noted that plaintiff had not required inpatient hospitalizations, surgical interventions, or other aggressive treatment modalities, and instead was primarily treated with medications. (Tr. 16). Fifth, the ALJ found that plaintiff's poor motivation to seek genuine treatment diminished his credibility.

24

(Tr. 18). The ALJ noted that records of plaintiff's mental health treatment reflected his focus on obtaining disability benefits, as well as his refusal for psychiatric treatment and transportation assistance to appointments. (Tr. 18, 835, 826). Finally, the ALJ noted that plaintiff's inconsistent statements about his substance use eroded his credibility. (Tr. 18, citing Tr. 565, 578, 601, 834). The ALJ's decision clearly reflects that he properly considered the required factors in making his credibility determination and that his decision is substantially supported by the record evidence.

    5.  <u>Sentence Six remand</u>

Finally, to the extent plaintiff may be seeking a remand under Sentence Six of 42 U.S.C. § 405(g) based on new and material evidence, the request should be denied. Plaintiff presents evidence that he contends contradicts the benign CCHB examination findings. (Doc. 9 at 6). This includes a "Certificate or Release or Discharge from Active Duty" from the military showing plaintiff was discharged "under other than honorable conditions" in 1991 and the 1991 Certificate of Death of his brother who committed suicide. (Doc. 9, Exs. C, D).

"The district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citations and internal quotation marks omitted). To show "good

25

cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id.; see also Oliver v. Sec'y of H.H.S.,* 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec. of H.H.S.,* 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff's evidence is from 1991, and he has not shown good cause for not presenting this evidence at the ALJ hearing. Nor is the evidence material as plaintiff claims an onset date of disability in October 2012. Therefore, plaintiff's request for a Sentence Six remand should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date: _9/25/15_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARIO L. COOPER,                               Case No. 1:14-cv-800
    Plaintiff,                             Barrett, J.
                                               Litkovitz, M.J.
    vs.


COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

27